Caruthers, J.,
delivered the opinion of tbe Court.
Tbe bill was filed to enforce a specific execution of a contract for tbe sale of lots in Memphis, and tbe question is, whether tbe contract is binding under tbe statute of frauds, so as to be enforced by a court of *465 equity. Tbe Chancellor thought if was, and decreed a specific performance. This' is the Writing:
“ This agreement of sale entered-, into 21 May, 1857, between C. W. Frazer, for himself, and the heirs of John A. Frazer, deceased, of the one part, and Thomas-Mull, of the other part, witnessoth, that said Frazer agrees to sell all the land now owned by himself and said heirs on Adams street, between Main and Second streets, south side of Adams, say 124 feet more or less,, fronting on Adams street, and running back to an alley, say 148 feet; and said Mull agrees to buy the same and pay for it the sum of' $250 per foot front; $6000 of said sum to be paid on 1st Nov;, 1857, the balance ” (of about $24,000) “in equal payments of one, two and three years from that date, with interest. A lien to be retained on said property for the payments.
Witness our hands and seals the day and date above written. C. W. FRAZER, [seal.]
THOMAS MULL, [seal.]
Test: E. L. JoNES,
W. H. WYNNE.”
The statute of frauds of 1801, requires that “no action shall be brought, * * * * upon any contract for the sale of lands, * * * * unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the -party to be charged therewith, or some other person by him thereunto lawfully authorized.”
This property belonged- to C. W. Frazer and his brothers and sisters, as the children and heirs of John *466 A. Frazer, deceased, bj descent. To make the contract of sale good and valid, it must have been signed by all the owners, by themselves, or some one lawfully authorized to sign their names for them, not by one of them alone. C. W. Frazer had no legal authority from the other owners at that time, and if he had, it was not executed, as he did not sign their names. The argument is that, as the action is against Mull, and he signed it, that is a compliance with the statute, as* he is the party attempted ‘‘ to be charged therewith.” This is not the meaning of the act — it means the persons -who sell the land shall sign the writing,; — the vendor, .and not the vendee. The filing of the bill by all the •vendors, with an express ratification of the contract therein, and tender of title, does not remedy the de~ .feet, of failure to sign the writing, by the vendor, as ds contended by counsel. That principle would make the ■contract binding on one party and not the other — on :the purchaser, and not the seller. Whereas, to make it • obligatory, it must be mutual.
The article leaves it entirely uncertain who are the .vendors. They are the heirs of Jno. A. Frazer, deceased. But how many of them are there, and what .are their names and condition? Are they adults, infants, .or femes covert? Then there is no title or right to a. ititle obtained in the contract.
We will say nothing as to the sufficiency of the description of the property, because the other point is decisive, and a further multiplication of eases on that subject in our books, is not desirable, as it would tend to produce confusion, and by our own cases, to which reference has been made in argument, the rules by which *467 contracts are to be tested, under the statute of frauds, are sufficiently explicit.
The decree must be reversed, and the bill for specific performance dismissed.